JOHANNA MOSKOVITZ and Another, as Administrators, etc., of ERNEST MOSKOVITZ, Deceased, Respondents, *v.* CHARLES LIGHTE and Another, Appellants.

*Negligence of the driver of horses — injury to a child on a crosswalk — prima facie case — amount of damages — age of the recipient of damages.*

On the trial of an action brought to recover damages for the death of a child four years old, a witness for the plaintiff testified that he saw the child walking across the street on the crosswalk and at the same time saw the defendants' truck and horses, some thirty or forty feet from the child, coming towards him slowly, at an ordinary trot, with no vehicle or other obstruction intervening; that the feet of the horses caused the child to fall, with a scream, and that the driver then stopped his horses.

*Held,* that this evidence, while slight and unsatisfactory, was susceptible of the inference that if the driver had been sufficiently vigilant and careful he would have seen the child in time to avoid injuring him, and that it, therefore, made out a *prima facie* case for the jury upon the question of the defendants' negligence.

A judgment will not be reversed on the ground that the verdict is against the weight of evidence, merely because the General Term is of opinion that if it had to decide the question of fact it might take a different view and reach another conclusion; it is only where the verdict is without evidence or so decidedly against the weight of evidence as to indicate partiality, corruption or gross ignorance that the General Term will disturb it.

A verdict for $2,000 damages for the death of a child four years old, through negligence, recovered by the mother, a widow with three other children, the oldest but thirteen years of age, is not excessive.

The mother, the person for whose benefit the damages were sought to be recovered, was produced as a witness and fully examined and cross-examined, and her circumstances and condition in life were proved.·

*Held,* that the jury were at liberty to infer her age from her appearance and from the fact that she had young children.

APPEAL by the defendants, Charles Lighte and William Lighte, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York,· on the 31st day of October, 1892, in favor of the plaintiffs, upon a verdict rendered at the New York Circuit and from an order denying the defendants'· motion, made upon the minutes, to set aside the verdict and for a new trial, entered in the said clerk's office on the 15th day of November, 1892.

*J. Aspinwall Hodge, Jr.,* for the appellants.

*Edgar G. Nathan,* for the respondents.

O'BRIEN, J.:

This action was brought to recover damages for the negligence of the defendants' servants in causing the death of plaintiffs' intestate. At the time of his death the decedent was four years of age and lived with his mother, who was a widow. On the morning of the accident he was playing in his mother's room, but during the latter's absence to fetch water the child escaped and got into the street, where it met with the injuries resulting in its death. The age of the child and the circumstances under which it got upon the street,

presented a question for the jury as to whether the negligence of the child itself or that of the mother, assuming upon the facts that it was imputable to the child, contributed to the death.

The more serious questions are, did the plaintiffs make out a *prima facie* case of negligence on the part of defendants' servants, and, assuming they did, was not the weight of evidence upon the whole case with the defendants, upon the question of such negligence ?

All the testimony presented on the part of the plaintiffs being that of one witness, is so brief that we can give a complete summary of it. Blumenfelt, called on behalf of plaintiffs, and who was examined through an official interpreter, testified as follows : That on the 9th of May, 1892, when the accident occurred, " I was standing at Avenue A, corner of First street, at the southwest corner ; I saw that the wagon of Lighte Bros. came along from Houston street to Avenue A ; it came from Houston street, east side, to the west side of Avenue A; I first saw the truck when it came into Avenue A ; the horses were only going ordinarily like, slowly, not very quickly ; they were in a trot; the horses, when I first saw them, were about fifty or sixty feet away from me. I did not see any wagon or other obstruction between me and this truck ; I first saw this little boy when he was on the crosswalk between the butcher shop and music store ; he was coming from the meat market to the music store ; when I first saw the boy on the crosswalk this truck was about thirty feet, perhaps thirty-five feet, away, and the boy was about thirty-five or forty feet from the truck. * * * He (the boy) did not go quickly ; he was walking; I saw that the boy fell from the first horse of the truck — fell in front of the horse ; the feet of the horse made him fall. When he fell he was over the tracks near the corner of First street." He further testified that there was no truck, carriage or other wagon in front of defendants' truck before it struck the boy to prevent the witness seeing the accident. And further, that he heard a scream, and it was after he heard this scream that the driver stopped his horses.

While this evidence is very slight and unsatisfactory, we cannot, as a matter of law, in the face of the cases of *Birkett* v. *Knickerbocker Ice Co.* (110 N. Y. 506), *Murphy* v. *Orr* (96 id. 14), and *Moebus* v. *Hermann* (108 id. 349), hold that this testimony did

not present a *prima facie* case for the jury upon the question of defendants' negligence.

*Murphy* v. *Orr* was a case like this, of a child between three and four years of age, while on the crosswalk, and passing over, being knocked down by one of the horses of a team attached to the defendant's truck, and the testimony in that case showing that the horses were moving at a walk, it was held that the trial judge committed no error in charging the jury to say whether, under all the circumstances surrounding the transaction, the driver was negligent in not discovering the child in time to prevent the injury ; and in the course of the opinion, DANFORTH, J., says : " Whoever drives horses along the streets of a city is bound to anticipate that travelers on foot may be at the crossing, and must take reasonable care not to injure them. He is negligent whenever he fails to look out for them, or when he sees and does not, so far as in his power, avoid them. There was evidence in this case fairly leading to either of these conclusions in regard to the driver's conduct. The day was clear and bright, the street was unobstructed, the horses, quietly moving on a walk, were completely under his control, and, from his elevated seat, he could, as is conceded, ' see a block away ' and ' all around in front and on both sides.' "

This view as to the duty devolving upon drivers of trucks upon the public streets was enforced in the case of *Moebus* v. *Hermann* (*supra*), which was a like action to recover damages for personal injuries received by a boy about seven years of age, who, when crossing a street in the city of Brooklyn, was struck, knocked down and injured by a horse belonging to defendant, attached to his truck, and driven by his servant. The additional fact appeared that the injury was received while the boy was attempting to cross the street, not at the crosswalk, but at another point. And it was therein held (head-note) : "A person on foot, desiring to cross a city street, has a right to cross, not only at the crosswalk, but wherever he pleases ; and one driving horses upon the street is bound to be watchful at all points, as well as at the crossings, so as not to injure persons crossing. If, therefore, through the omission of a servant engaged in the business of and driving the horse of his master, to perform this duty, he does not see a person crossing at a point where there is no cross-

walk, or, if seeing him, he fails to stop the horse in time, when with proper care, he might have done so, and the latter is injured, without fault or negligence on his part, the master is liable for the damage."

The principle enunciated in these two cases was again enforced in *Birkett* v. *Knickerbocker Ice Co.* (*supra*), which was a case of a girl four years and a half old, being killed by horses attached to the defendant's ice wagon, which were driven against her at a street crossing in the city of Brooklyn. This upon many of the questions here involved is an instructive case, and is to us a seeming authority upon the question of the sufficiency of plaintiffs' testimony as to making out a *prima facie* case, and upon the rule to be applied in determining what degree of care is to be exacted of a child of tender years. In the opinion it is said: "If the intestate had been an adult, we think the evidence would have justified the claim of the defendant that her own negligence contributed to the injury. But she was *non sui juris* and personal negligence could not be imputed to her. It is, however, contended that she was so young that her parents were guilty of negligence in permitting her to go into the streets unattended. The intestate resided with her parents in a thickly-populated neighborhood, and there was no inclosed space around the house for children to play, and plaintiff's children were permitted to play upon the sidewalk near his house. * * * It cannot be said that it was, as a matter of law, under the circumstances proved, negligence for the parents to permit her to go on the sidewalk to play, and whether it was or not, was a question for the determination of the jury."

And again, in the opinion, it is said — and this bears upon the question we are discussing, as to whether the plaintiffs here made out a *prima facie* case: "We are also of opinion that there was no error in submitting the question of the negligence of the defendant's driver to the jury. His wagon was heavily loaded, and he was driving upon a descending grade. There was apparently nothing to distract his attention, and it was his duty to be vigilant to see pedestrians in the street, and particularly at street crossings, so as not to injure them. While we do not think this branch of the plaintiff's case is free from doubt, we are unable to say that the jury could not properly find that if the driver had been sufficiently

vigilant and careful he would have seen the child in time to avoid injuring her."

So we say here, the plaintiffs' testimony is unsatisfactory and by no means free from doubt, but it is susceptible of the inference that if the driver had been "sufficiently vigilant and careful he would have seen the child in time to avoid injuring him."

The evidence of the plaintiffs being, upon the authority of these cases, sufficient to make out a *prima facie* case, the question still remains as to whether or not, upon the whole case, considering the number of witnesses produced by defendants, there was not a clear preponderance in defendants' favor upon the question of negligence sufficient to justify a setting aside of the verdict. It must be remembered, however, that a judgment will not be reversed on the ground that the verdict is against the weight of evidence, merely because this court is of opinion that if it had to decide the question of fact it might take a different view and reach another conclusion, but that it is only where the verdict is without evidence, or so decidedly against the weight of evidence, as to indicate partiality, corruption or gross ignorance, that this court will disturb the verdict.

Outside of the driver and his assistant, three disinterested witnesses were produced for defendants, who tended to support the version given by the driver, that the death was caused by the child's running from the sidewalk across the street and into the defendants' horses, and that the driver stopped as soon as under the circumstances it was possible. It is argued that these witnesses in no way contradicted the witness produced by the plaintiffs, but that they supplemented and reconciled his testimony to a version consistent with the absence of negligence upon the part of the defendants' servants. While there is much force in this suggestion, and while the case upon all the facts is a close one as to whether or not the motion to dismiss the complaint should not have been granted, we think that, upon the authorities already cited, it was a question upon the entire testimony to be presented upon both branches to a jury; and a piece of evidence that is to some extent important, given by one of the disinterested witnesses for the defendants, might, if the jury gave it sufficient weight, have explained the failure of the defendants' driver to observe the child in time to avoid the injury.

The testimony of this witness, who was a woman, was that " there were two men on the wagon, one with light hair and one with black, and they were driving ahead. *They were talking together.* They did not look at no one at all until after I hollered."

Upon a fair and impartial charge, therefore, the questions having been presented to the jury, their verdict is conclusive.

The amount awarded by way of damages, namely, $2,000, is large, but not so excessive as to justify us in reversing the judgment upon this ground. As said in *Lockwood* v. *N. Y., L. E. & W. R. R. Co.* (98 N. Y. 523): " The courts have found it impossible to lay down any definite guide for the jury in estimating damages under the act in question. * * * In but few cases arising under this act is the plaintiff able to show direct, specific pecuniary loss suffered by the next of kin from the death, and generally the basis for the allowance of damages has to be found in proof of the character, qualities, capacity and condition of the deceased, and in the age, sex, circumstances and condition of the next of kin. The proof may be unsatisfactory and the damages may be quite uncertain and contingent. Yet the jurors in each case must take the elements thus furnished and make the best estimate of damages they can."

Here the evidence showed the condition and circumstances of the mother, who was the sole next of kin; and she testified as to the facts connected with her own affairs, that she was a widow, the mother of four children, the eldest but thirteen, and the youngest, the decedent, but four years of age. And this testimony was presented for the consideration of the jury. It is insisted, however, that in addition to condition and circumstances, the age of the mother should have been given.

In *Carpenter* v. *Buffalo, N. Y. & P. R. R. Co.* (38 Hun, 120), the following appears in the opinion : " One element in the sources from which loss to those, for whose benefit a recovery in such case is had, is to be ascertained, is their age, condition and circumstances. There is an entire absence of evidence in any of those respects of the father of the deceased. That he was living is the only fact which can be assumed in relation to his condition upon the evidence."

This case, it is contended by the appellant, is conclusive of the view that the failure to prove the age of the mother was fatal to any recovery beyond nominal damages. We think, however, that,

taking the very language which we have quoted from the opinion in the case relied upon by him, he overstates the rule in his own favor. That case does not go to the extent of holding that the mere failure to prove the age is fatal to any recovery. In that case there was no proof of age, condition or circumstances and, as therein stated, there was no evidence before the jury, except the single fact that the father, whose loss was to be determined and compensated in damages under the statute, was alive. Here, as shown, the circumstances and condition in life of the mother were proved. She was produced as a witness and examined before the jury, who, independently of the information derived from her testimony, were in a position to determine, without any great danger of being seriously misled, about her age. Had she not been produced, there would be much force in the argument of appellant; but being fully examined and cross-examined by counsel upon the trial, and proof being furnished that she had young children, this, together with her appearance, was evidence from which the jury were at liberty to infer her age. And even though she had been much further advanced in years than the jury would have been justified in concluding from the circumstance of her having young children, the award could not, under the rules for estimating damages, be deemed excessive, and the judgment on this account should not be disturbed.

We are of opinion, therefore, that the judgment should be affirmed, with costs and disbursements.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs and disbursements.